1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DAVID TURK AND MARISSA TURK,

Plaintiffs,

v.

UNITED SERVICES AUTOMOBILE
ASSOCIATION,

Defendant.

CASE NO. C14-5878 RBL

ORDER GRANTING MOTION TO
REMAND

[Dkt. #s 16 and 17]

THIS MATTER is before the Court on Plaintiff Turk's Motion to Remand [Dkt. #17] this

case to Pierce County Superior Court.  Turk[1] claims that her proposed class action against

USAA[2] does not meet the Class Action Fairness Act's $5 million jurisdictional threshold.

The case involves Turk's claim that USAA failed to pay its insureds "loss of use"

damages reflecting the time that their vehicles were not usable for at least one day following an

accident with an un- or under- insured at-fault driver.  Turk purports to represent a class of

---

[1] David and Marissa Turk are both plaintiffs, but the vehicle in question belongs to
Marissa Turk, and this order will use "Turk" in the singular, for ease of reference.

[2] Turk actually sued four USAA-related insurers.  "USAA" refers to all of them in this
order.

1  Washington USAA UIM policy holders who were not compensated for this loss of use between

2  September 3, 2008 and July 31, 2014.  Turk claims that the average loss of use (reflected by the

3  cost to rent an alternate vehicle) is $35 per day.  Turk's vehicle was in the repair facility for 44

4  days, and her claimed loss of use was $1540.  She claims that the average loss for the

5  approximately 5000 (or 6000) class members is much less—4 days, or $140.  She asserts only a

6  breach of contract claim, and seeks only compensatory damages, post judgment interest,

7  injunctive relief, and (statutory) attorneys' fees.  [Complaint Dkt. #3-1]

8      USAA removed the action under CAFA [28 U.S.C. §§ 1332(d), 1446, and 1453],

9  claiming that Turk's claims satisfied that statute's $5 million "amount in controversy"

10  requirement.  It relied on the Declaration of Alan Bush, a USAA staff claims advisor, who

11  reviewed USAA's electronic records and determined that the class includes "approximately"

12  18,362 members (an average of 3446 per year).  USAA claims that the compensatory damages at

13  issue are therefore **$2.57 million**.

14      USSA claims that the injunctive relief (presumptively, forcing USAA to pay similar

15  claims in the future) would add another $482,440 per year to the amount in controversy.  Thus, if

16  Turk obtained a three year injunction, that would add **$1.45 million** to the amount in

17  controversy.

18      USAA also claims that a 25% attorneys' fee is typical in successful class action litigation,

19  and that Turk's fees would add another **$1 million** (based on a three year injunction)—even

20  though neither it nor Turk has identified the source of the Plaintiffs' right to attorneys' fees.

21  USAA argues that these components alone exceed the $5 million jurisdictional requirement.

22  Indeed, it claims that the threshold is met even without including **treble damages**, which USAA

23

24

1   claims Turk has "put at issue," despite not asserting a CPA or IFCA claim, or otherwise

2   claiming, or asserting a right to, treble or exemplary damages.

3                                                   \*\*\*

4         Turk's Motion to Remand argues that under CAFA, the removing party remains

5   obligated to demonstrate by a preponderance of the evidence that the jurisdictional threshold is

6   met.  *Citing Rodriquez v. AT&T Mobility Servs*., LLC, 728 F.3d 975, 981 (9th Cir. 2013).  She

7   argues that USAA's estimate of the number of class members is exaggerated, that the injunctive

8   relief amounts are speculative or miscalculated, and that she has not asserted a claim that would

9   lead to an award of anything other than nominal, statutory attorneys' fees, and has not asserted a

10  claim for treble damages.  She urges the Court to follow  *Johnston v. United Services Automobile*

11  *Association*, No. 14-5660-RJB (W.D. Wa 11/10/14), in which Judge Bryan remanded a similar case,

12  holding that the insurer had not met its obligation to establish that the jurisdictional threshold was

13  met.

14        USAA argues that *Johnston* does not apply, and that it is in any event wrong on two

15  points: it erroneously applied the general "strong presumption" against removal jurisdiction to a

16  CAFA removal, and it failed to properly account for the "value" of the injunctive relief the

17  plaintiffs sought[3].  USAA also argues that Turk's Motion to Remand relies improperly on the

18  "testimony" of plaintiffs' counsel—to the effect that Bush's calculations overstate the class size.

19  Turk's attorney claims that 20% - 40% of the USAA Washington insureds involved in an

20  accident requiring their vehicles to be in the shop for at least a day had rental car coverage, and

21  therefore did not suffer the claimed "loss of use," and cannot be counted in the class.

22  

23        [3] Turk points out that the Ninth Circuit denied USAA's motion to appeal Judge Bryan's

24  remand order.  [Dkt. #27-1]

1    USAA emphasizes that the potential for treble damages must be included in the amount

2  in controversy calculation, because even though no such claim was pled, Turk's factual

3  allegations *could* support such a claim under the IFCA.  It cites a number of cases for the

4  proposition that punitive damages must be counted in the amount in controversy, even if they are

5  not pled or sought.

6    Finally, USAA argues that, for the same reason, the attorneys' fees available to a

7  successful plaintiff asserting claims under the CPA or IFCA should also be included in the

8  "amount in controversy" calculus.

9                                    **DISCUSSION**

10 **A.  Removal Standard in CAFA cases.**

11    The first issue is the appropriate standard to apply to USAA's removal.  In *Johnston*,

12 Judge Bryan relied on the traditional removal presumption in remanding the case:

13      The removing defendant must prove by a preponderance of the evidence that the
        amount in controversy meets the jurisdictional requirement. *Id.* at 683. A "strong
14      presumption" exists against federal jurisdiction. *Gaus v. Miles, Inc*., 980 F.2d 564,
        566 (9th Cir. 1992) (citation omitted). If there is any doubt as to the existence of
15      federal jurisdiction, the court should remand the matter to state court. *Id.* The
        presumption against removal jurisdiction applies with particular force to
16      defendant's arguments that the complaint frames an amount in controversy that
        exceeds the jurisdictional minimum. *Id.*

17

18 *Johnston* at 5-6 ]Dkt. #171].  The former is a correct statement of the law, but the accuracy of the

19 latter is called into question by cases holding that the presumption that is routinely applied when

20 evaluating the propriety of removal in "normal" diversity cases does not apply in CAFA[4] cases.

21 *See Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S.Ct. 547, 545 (2014) ("It suffices

---

22      [4] In addition to the "usual" diversity jurisdiction removal requirements, CAFA removal is
23 available when the proposed class is 100 or more persons and the amount in controversy is at
   least $5 million, exclusive of interest and costs.  The 30 day time limit applicable to removal
24 generally does not apply to CAFA removal.

1   to point out that no antiremoval presumption attends cases invoking CAFA, which Congress

2   enacted to facilitate adjudication of certain class actions in federal court.")  USAA also cites

3   *Corber v Xanodyne Pharmaceuticals, Inc.*, 771 F.3d 1218 (9th Cir. 2014) for the proposition that

4   the court should look to the "real substance" of the complaint to "determine the amount in

5   controversy; an express articulation of the relief requested is not required."  As USAA implicitly

6   concedes, however, that is not what *Corber* held, or even what *Corber* was about.  *Corber* dealt

7   instead with whether and how to characterize a "mass action's" request for a joint trial (including

8   the number of plaintiffs) to see if the CAFA's jurisdictional requirement of "monetary relief

9   claims of 100 or more persons proposed to be tried jointly."  The Court looked to the "real

10   substance" of the plaintiffs' petitions to determine if they in fact sought a *joint trial*—the $5

11   million threshold was not at issue in that case, and it does not provide any guidance on the issue

12   in this one.  *Corber*, 771 F.3d at 1225.  In any event, it is clear that the removing defendant

13   retains the obligation to demonstrate by a preponderance of the evidence that the jurisdictional

14   amount in controversy is met in order to sustain its removal in the face of a motion to remand.

15   **B.   The size of the proposed class.**

16        Turk claims, and USAA concedes for purposes of the motion, that the class insureds

17   suffered an average of 4 days, or $140, loss of use damages.  Turk claims that USAA'a class size

18   estimates are, as they were in *Johnston*, demonstrably inflated.  She argues, correctly, that Bush

19   has not (but obviously— perhaps easily—could[5] have) attempted to calculate the number of

20   insureds who are excluded from the class size calculation because they (unlike Turk) had rental

21   car coverage.

22

23

24   

---

[5] Bush filed a Supplemental Declaration expanding on his calculations, but it did not address the number or percentage of insureds that had rental car coverage.

1   The court need not rely on Turk's attorney's "testimony" to recognize that at least some

2   portion of the insureds at issue did not suffer the "loss of use" claimed by the class here, because

3   their policies provided a rental car.  The preponderance of the evidence supports the conclusion

4   that the class as defined by Turk, as estimated by USAA (minus 20% for those who had rental

5   coverage) is approximately 14,500.  Multiplied by the $140 class average, the amount put in

6   controversy on this basis is **$2.02 million**.

7   **C.  The impact of Turk's claim for injunctive relief on the amount in controversy.**

8   USAA argues that if it is forced to pay similar claims into the future (at the same rate per

9   year, at an average of $140 per claim) the additional amount in controversy for a three year

10  injunction would be $1.45 million**.**

11  Turk claims that the amount of a future injunction is necessarily speculative, and argues

12  that those hypothetical damages should not be considered in evaluating the amount in

13  controversy.  He notes that in *Johnston*, the court did not attribute any value to the injunctive

14  relief sought by the plaintiff for this reason.  Turk also points out that her complaint did not

15  actually ask the court for the sort of injunction that USAA describes.  She instead broadly

16  claimed "injunctive, equitable, and declaratory relief as needed to effectuate the court's orders

17  and judgment."  [Dkt. #1-1 at 26.]  It argues that there is no authority for "tacking on" multiple

18  years of future compensatory damages to calculate the amount in controversy.

19  USAA again argues that the court must look at the real substance of the complaint, and

20  that the cost to USAA for the desired "cessation" of its claims handling practices does in fact

21  amount to $482,400 per year.  It cites CAFA, the policies behind it, and *Tuong Hoang v.*

22  *Supervalu, Inc*., 541 F App'x. 747 (9th Cir. 2013), for the proposition that the injunctive relief

23  sought does not have to be "mandatory, affirmative relief" to count toward the aggregate $5

24  million.

1  The court agrees that "$0" is too little to attribute to the value of injunctive relief in a case

2  claiming that the current practices are, at least, a breach of the insurance contract.  But at some

3  point, the value or cost of such an effect on claims practice is, as Turk claims, purely speculative.

4      The Court will consider 3 years at $482,400, reduced again by the 20% of future insureds

5  who, like those today, will have opted for rental car coverage, in evaluating the amount in

6  controversy.  This amount is **$1.16 million**.

7  **D.  The impact of USAA's claim that Turk's complaint put treble damages "in play."**

8      USAA's claim that Turk's complaint must be read to include a claim that they violated a

9  statute giving rise to punitive or treble damages, and that the potential amount of those damages

10 must be included in the amount in controversy, does not fare as well.  USAA glosses over the

11 fact that Turk's complaint does not reference the CPA, or the IFCA, or any other statute that

12 even theoretically provides for an award of treble or punitive or exemplary damages.  And none

13 of the cases its cites—certainly not *Back Doctors Ltd. v. Metropolitan Prop. & Cas.*, 637 F.3d

14 827 (7th Cir, 2011) , upon which it especially relies—involve a similar complaint.  As USAA

15 concedes, in *Back Doctors,* the plaintiffs alleged the "violation of a statute authorizing punitive

16 damages (the Illinois CPA)."   That is not "*precisely*" like this case; it is almost exactly the

17 opposite.

18     If a plaintiff did not plead such a violation, but then sought punitive damages at trial, the

19 defense attorney would vehemently and effectively pound the table, arguing that the punitive

20 damages were not in the case.  They are not in this case, and they are not part of the calculus.

21 **E.   USAA's claim that lodestar or "25%" attorneys' fees should be included in the
       amount in controversy.**

22     For the same reason, the "25% attorneys' fee" that USAA seeks to include in the amount

23 in controversy is not properly counted.  Turk has not pled the violation of any statute that would

24

1   permit her to recover anything other than nominal attorneys' fees.  In *Johnston*, the plaintiff

2   argued that he insurer had violated the IFCA. In this case, she has, perhaps consciously, not.

3       Turk's complaint asserts only one claim: breach of contract.  Neither Turk nor USAA

4   claims that that contract gives Turk the right to a "reasonable" or lodestar (or 25% contingent)

5   attorneys' fee if she prevails.  And, as Turk argues, if and when the case *does* include a claim for

6   such a fee (or for treble damages), USAA can remove it then.

7       For now, however, the amount in controversy in this case is well below the $5 million

8   "amount in controversy" threshold for this court to have jurisdiction over it.

9       Turk's Motion to Remand [Dkt. #17] is GRANTED and this case is REMANDED to the

10   Pierce County Superior Court.  USAA's Motion to Dismiss [Dkt. #16] is DENIED as moot,

11   without prejudice, of course, to raise it in state court.

12       IT IS SO ORDERED.

13       Dated this 18th day of March, 2015.

14

15                                                                    

16                        RONALD B. LEIGHTON
                     UNITED STATES DISTRICT JUDGE

17

18

19

20

21

22

23

24